# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AUSTIN GLADHILL, III, # 322-221 | * | |
| | * | |
| v. | * | Civil Action No. CCB-12-3004 |
| RANDY WATSON, Commissioner of Corrections | * | |
| | * | |

*****

## MEMORANDUM

Austin Gladhill ("Gladhill"), a self-represented litigant, brings this hybrid civil rights and habeas corpus action for injunctive relief and damages under 42 U.S.C. § 1983 and 28 U.S.C. § 2241, alleging his diminution credits[1] were "illegally confiscated." (ECF No. 1, Attachment at 1.) By his counsel, defendant Randy Watson ("Watson"), Director of Programs and Services, Department of Public Safety and Correctional Services,[2] filed, with exhibits, a motion to dismiss or in the alternative, a motion for summary judgment. (ECF No. 9.) Gladhill filed a reply. (ECF No. 12.) The case is ripe for disposition, and the court deems a hearing unnecessary to resolve the issues. *See* Local R. 105.6 (D. Md. 2011). For reasons to follow, the court will grant summary judgment in favor of Watson.

---

[1] "Diminution credits can be earned by inmates to reduce the lengths of their confinements." *Frost v. State*, 336 Md. 125, 128 (1994); Md. Code Ann., Corr. Servs., §§ 3-702 to 3-707 (outlining the circumstances under which diminution credits are earned).

[2] The docket will be amended to reflect Watson's correct title.

# BACKGROUND

## A. Gladhill's Claims

Gladhill, who is presently an inmate at the Maryland Correctional Institution-Hagerstown,[3] claims 355 days of diminution credits awarded to him for double-celling or overcrowding were revoked in violation of his civil rights, right to due process, and rights under the Eighth Amendment. (ECF No. 1, Attachment at 1.) Gladhill describes the "civil Rights violations" as the revocation of double-celling credits he claims he was awarded for "overcrowding Eighth Amendment Violations," or more specifically, "the violation of [his] right to 55 square feet of space per person." (*Id.*, Attachment at 4.) Additionally, Gladhill argues his "rights to Due Process have been violated because the [Division of Corrections or "DOC"] has breached a verbal contract by failing to restore [his] credits . . . ." (*Id.*, Attachment at 5.) As relief, he asks for damages as well as restoration of his credits. (*Id.* at 8.)

## B. Facts

On March 7, 2011, Gladhill was removed from the Gaudenzia Drug Program after he was charged with violating Inmate Rule 104. (ECF No. 10 at 2; *id.*, Ex. 1.) According to the defendant, Inmate Rule 104 involves the use of intimidating, coercive, or threatening language. (*Id.* at 2.) Gladhill was charged with the rule violation after he informed his counselor, Ms. Poff ("Poff"), that a certain correctional officer ("CO") made him angry. (*See id.*, Ex. 1.) Gladhill told her: "when I get out [of DOC], I'm going to find out where [that CO] lives and kill him." (*Id.*) According to Poff's written statement, "[s]everal minutes later, during the same conversation, Inmate Gladhill stated that he is 'angry and resentful' and that [he is] going to kill anyone that stands in [his] way." (*Id.*)

---

[3] *See* http://www.dpscs.state.md.us/inmate/search.do?searchType=detail&id=90595.

On March 15, 2011, a DOC hearing officer conducted a hearing on the matter and found Gladhill guilty of violating Rule 104. (*Id.*, Ex. 2.) The acting warden affirmed the hearing officer's decision, noting "[t]hreats against staff or others [are] unacceptable and all precautions shall be taken to prevent such occurrences." (*Id.*, Ex. 3.)

As a result of his disciplinary rule conviction for use of threatening language against staff, Gladhill was charged on April 4, 2011, with violating Rule 204. (*Id.* at 3; *id.*, Ex. 4.) According to the defendant, Rule 204 prohibits an inmate from "[r]efus[ing] to participate in or engag[ing] in behavior that results in removal from a mandatory remediation program[.]" (*Id.* at 3.) *See also* COMAR 12.02.27.03.A(3) (providing DOC inmates must "comply with the rules of: . . . [a] program to which the inmate is assigned")

On April 14, 2011, Gladhill appeared before Hearing Officer David Sipes ("Sipes") for his disciplinary hearing on the Rule 204 charge and pleaded guilty to the violation "in an agreement with the institution for 30 days of segregation [and] revocation of 1,158 [of his good conduct and special project credits]." (ECF No. 10, Ex. 5.) Because Gladhill's disciplinary history was deemed "poor," he received 30 days of segregation, loss of the diminution credits, and "180 days [loss of visits] as mandated by COMAR." [4] (*Id.*)

Gladhill asserts Sipes "advised" him "'its [sic] standard procedure to revoke your credits, but then once you go back to housing unit eight and finish the program you will get them back." (ECF No. 12 at 1-2; ECF No. 1, Attachment at 2.) Gladhill claims Sipes "explained" the credits would be restored. (ECF No. 1, Attachment at 2.) In his reply, Gladhill characterizes this explanation as a "promise" and states "[t]hat was the "sole basis for entering into a plea

---

[4] COMAR 12.02.27.38.A (13) provides:"[a] defendant inmate found guilty of an inmate rule violation shall have visiting privileges suspended for 6 months if the inmate rule violation is for: . . . [r]efusal to participate in a mandatory remediation program."

agreement with the state in regards to the rule 204 violation." (ECF No. 12 at 2.) Gladhill claims that after he entered his plea, Sipes "added" loss of visiting privileges. (*Id.*)

On August 16, 2012, Gladhill filed a grievance based on the revocation of his credits with the Inmate Grievance Office ("IGO"). (ECF No. 10, Ex. 7.)[5] On October 10, 2012, IGO Deputy Director Robin Woolford sent correspondence to Gladhill, instructing him to "provide a copy of all missing Case Management paperwork within 30 days of the date of this letter" and cautioning him that failure to submit this paperwork would result in the dismissal of the grievance "without further notice." (*Id.*) Watson asserts the IGO received no further documentation from Gladhill, and his grievance was deemed dismissed 30 days later. (ECF No. 10 at 4-5.) Watson, however, has filed no declaration or other documentation to support the assertion that Gladhill failed to provide the requested paperwork, and Gladhill states his claim was "denied all the way through the I.G.O. process." (ECF No. 12 at 2.) Gladhill acknowledges, however, that he did not seek judicial review of the IGO decision. (ECF No. 1 at 6-7.)

Gladhill eventually reentered and completed the Gaudenzia Drug Program at Patuxent Institution. (*Id.*, Attachment at 2; ECF No. 10 at 4.) Thereafter, he requested restoration of the 1,158 credits. Full restoration of credit was recommended by Mr. Lagendre, Gladhill's case manager, Ms. Davis, the case management supervisor, Ms. Johnson, the facility administrator, and Ms. Chippendale, the regional warden. (ECF No. 12 at 5; ECF No. 1, Attachment at 3-4; ECF No. 10, Ex. 6.)

On September 24, 2012, Watson partially granted Gladhill's restoration request, returning half the number (579) of the 1,158 revoked credits because "the nature of the infraction and threat against staff does not warrant full restoration." (ECF No. 10, Ex. 6.) Gladhill asserts among the unrestored credits were 355 for double celling. (ECF No. 12, Ex. A.) He does not

---

[5] Neither party has filed a copy of the actual IGO grievance.

claim, and it does not appear, he appealed Watson's decision to restore only half the credits to the IGO or to the state courts of Maryland.[6]

## STANDARD OF REVIEW

Because matters outside the pleadings will be considered, Watson's motion shall be treated as a motion for summary judgment. Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must set forth specific facts showing that there is a genuine issue for trial." *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *See Dennis v. Columbia Colleton Medical Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by "the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *See Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted)).

---

[6] Gladhill filed his IGO grievance on August 16, 2012. Watson restored half the credits on September 24, 2012. Thus, it does not appear Gladhill filed an IGO grievance specifically disputing the decision not to restore his 355 special project or double-celling credits.

5

**DISCUSSION**

Watson avers he is entitled to summary judgment as to Gladhill's habeas claims because Gladhill failed to exhaust available state remedies. In regard to Gladhill's claims of civil rights and due process infringement, Watson seeks summary judgment in his favor on the grounds of failure to state a civil rights claim, Eleventh Amendment immunity, qualified immunity, and lack of administrative exhaustion.[7]

### A. Exhaustion of Claims for Habeas Relief

Watson argues Gladhill's claim for habeas corpus relief should be dismissed for lack of exhaustion. Before a prisoner may file a petition for habeas relief in federal court, he must exhaust each claim presented to the federal court through remedies available in state court. *Rose v. Lundy*, 455 U.S. 509, 510, 520 (1982). The exhaustion requirement "is rooted in considerations of federal-state comity," and in the congressional determination reflected in the federal habeas statutes that "exhaustion of adequate state remedies . . . will best serve the policies of federalism." *Preiser v. Rodriguez*, 411 U.S. 475, 491-92 & n.10 (1973). The purpose of exhaustion is "to give the State an initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971). Thus, a petitioner must offer the state courts an adequate opportunity to address the constitutional claims advanced on federal habeas. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Duncan v. Henry*, 513 U.S. 364, 365 (1995). This requirement is satisfied by seeking review in the highest state court with jurisdiction to consider the claim. *See* 28 U.S.C. § 2254(b)(1)(a), (c) (setting forth the exhaustion requirement); *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) (same); *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991) (same).

---

[7] If Gladhill failed to appeal the dismissal of his IGO grievance, then his diminution credit claim may be dismissed for lack of administrative exhaustion. *See* 42 U.S.C. §1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Anderson v. XYZ Corr. Health Servs.*, 407 F.3d 674, 676-77 (4th Cir. 2005).

A Maryland inmate seeking to challenge the calculation of his term of confinement may pursue both administrative and judicial remedies. The inmate may file a grievance with the IGO. Md. Code Ann., Corr. Servs. § 10-206(a); *Adamson v. Corr. Med. Servs., Inc.*, 359 Md. 238, 257, 753 A.2d 501, 511 (2000). If the grievance is not found to be lacking in merit on its face, it is referred to the Office of Administrative Hearings ("OAH") for a hearing before an administrative law judge. Md. Code Ann., Corr. Servs. § 10-207(c). An OAH determination that the matter lacks merit constitutes a final decision of the Secretary of Public Safety and Correctional Services for the purpose of judicial review. *Id.* at § 10-209(b). If the OAH finds merit, an order is forwarded to the Secretary who may affirm, reverse, or modify the order of the OAH. *Id.* at § 10-209(b)-(c).

The Secretary's decision may be appealed "in the circuit court of the county in which the complainant is confined." *Id.* § 10-210(b)(2). The inmate may then request review in the Maryland Court of Special Appeals by filing an application for leave to appeal. *Id.* § 10-210(c)(2). If the Maryland Court of Special Appeals grants the application for leave to appeal, but denies relief on the merits, the inmate may seek review in the Maryland Court of Appeals by filing a petition for writ of certiorari. Md. Code Ann., Cts. & Jud. Proc. § 12-201; *Williams v. State*, 292 Md. 201, 207, 438 A.2d 1301, 1304 (1981).

An inmate who "alleges entitlement to immediate release and makes a colorable claim that he or she has served the entire sentence less any mandatory [diminution] credits" may request relief directly from the Maryland circuit courts by petitioning for a writ of habeas corpus. *Maryland House of Corr. v. Fields*, 348 Md. 245, 260, 703 A.2d 167, 175 (1997), *abrogated on other grounds by Moats v. Scott*, 358 Md. 593, 751 A.2d 462 (2000). The inmate may appeal the circuit court's decision to the Maryland Court of Special Appeals, and may thereafter seek

certiorari in the Court of Appeals of Maryland. *See generally Stouffer v. Pearson*, 390 Md. 36, 887 A.2d 623 (2005); *Jones v. Filbert*, 155 Md. App. 568, 843 A.2d 908 (2004); *Stouffer v. Staton*, 152 Md. App. 586, 833 A.2d 33 (2003).

In this matter, Gladhill acknowledges he failed to pursue judicial review of the IGO dismissal of his grievance based on his diminution credits or otherwise present his claims to the state courts. (ECF No. 1 at 6-7.) Consequently, he fails to demonstrate exhaustion of state remedies, his claims for habeas relief will be dismissed, and Watson is entitled to summary judgment in his favor as a matter of law.

### B. Civil Rights Claims

Gladhill claims (1) his "rights to Due Process have been violated because the [DOC] has breached a verbal contract by failing to restore [his] credits after [he] completed the mandatory program;" and (2) his "Eighth Amendment Rights have been violated because 355 days [he] received as an award for housing have been revoked." (ECF No. 1, Attachment at 5.) Watson offers several defenses to Gladhill's claims.

#### 1. Eleventh Amendment Immunity

Insofar as Gladhill's § 1983 claims for monetary relief are against Watson in his official capacity, they are barred under the Eleventh Amendment to the United States Constitution. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98-103 (1984) (explaining when the Eleventh Amendment bars suit); *Gray v. Laws*, 51 F.3d 426, 430-31 (4th Cir. 1995) (same). Watson is entitled to summary judgment.

The Eleventh Amendment provides "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S.

Const. amend. XI. Sovereign immunity protects both the state itself and its agencies, divisions, departments, officials, and other "arms of the State." *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.") (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities.").

Because Watson is the Director of Programs and Services for the Department of Public Safety and Correctional Services, a department of Maryland State government, he is not amenable to suit in his official capacity under 42 U.S.C § 1983. *See* Md. Code Ann., Corr. Servs. § 2-101; *id.* § 2-201(1). As an arm of the state, Watson is entitled to sovereign immunity and is not amenable to suit as a "person" under § 1983 in that capacity. *See Will*, 491 U.S. at 70-71. Although a state may waive sovereign immunity, *Lapides v. Bd. of Regents*, 535 U.S. 613, 618 (2002), "it has not waived its immunity under the Eleventh Amendment to suit in federal court." *Dixon v. Baltimore City Police Dep't*, 345 F. Supp. 2d 512, 513 (D. Md. 2003).

2. **Due Process**

Even if the claims against Watson were not dismissed for the grounds stated above, Gladhill's claims fail to show a denial of procedural or substantive due process. Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of

diminution credits, he is entitled to certain due process protections: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See id.* at 563-71.

Gladhill does not assert his hearing was procedurally defective. Further, the record shows his hearing comported with procedural due process. (ECF No. 10, Exs. 4 and 5.) Instead, he presents conclusory and self-serving assertions that he was "promised" or "advised" his diminution credits would be restored upon completion of the drug program. Gladhill may have genuinely misunderstood that restoration of credits was not mandatory. Nevertheless, it is clear pursuant to statute and regulation, Watson, as the Commissioner's designee, properly exercised his discretionary authority when he restored only half of Gladhill's credits. Put another way, Watson was permitted, but not required, to restore revoked diminution credits. Watson did not violate Gladhill's constitutional rights in this exercise of discretionary authority. *See* Md. Code Ann., Corr. Servs. § 3-709(a) (providing "[i]f an inmate violates the applicable rules of discipline," the DOC "may revoke a portion or all of the diminution credits awarded" to the inmate "according to the nature and frequency of the violation"); *id.* 3-709(b) ("[DOC] *may* restore diminution credits revoked under this section") (emphasis added); *see also* COMAR 12.02.06.06.A (providing "upon the recommendation of case management staff, a warden *may* restore diminution credit revoked during the current incarceration") (emphasis added).

Substantive due process is satisfied if the disciplinary hearing decision was based upon

"some evidence," *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985), and federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will be disturbed only when they are unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 455-56. As long as some evidence in the record supports the factual findings, a federal court will not review their accuracy. The record shows sufficient evidence to support the disciplinary decision. Accordingly, Watson is entitled to summary judgment in his favor.

### 3. Eighth Amendment

Watson asserts Gladhill's allegation of an Eighth Amendment violation fails to state a claim and indicates a misunderstanding of double-celling credits. (ECF No. 10 at 12.) Watson states double-celling credits are not awarded as a result of "overcrowding Eighth Amendment violations" or because, as Gladhill appears to assume, an inmate has a "constitutional 'right to 55 square feet of space.'" (*Id.*)

Watson explains Md. Code Ann., Corr. Servs. § 3-707 governs the allowance of special project credits and provides, in relevant part:

> In addition to any other deductions allowed under this subtitle, an inmate may be allowed a deduction of up to 10 days from the inmate's term of confinement for each calendar month during which the inmate manifests satisfactory progress in those special selected work projects or other special programs designated by the Commissioner [of Correction] and approved by the Secretary [of Public Safety and Correctional Services].

Md. Code Ann., Corr. Servs. § 3-707.

There is no Eighth Amendment or other constitutional right to earn special project credits for double celling. Pursuant to Md. Code Ann., Corr. Servs. § 3-709(a), the DOC has issued regulations for special project credits for certain inmates who were double-celled, or who were housed in dormitories with less than 55 square feet of living space per inmate, exclusive of

11

dayrooms, toilets, and showers. *Smith v. State*, 140 Md. App. 445, 451-55, 780 A.2d 1199, 1203-06 (2001); *Sec'y, Dep't of Pub. Safety and Corr. Servs. v. Demby*, 390 Md. 580, 593-96, 890 A.2d 310, 317-19 (2006). In fact, inmates serving sentences for certain offenses, including crimes committed on or after July 1, 2007, are not eligible to earn double celling credits. COMAR 12.02.06.04.F.(3). In light of the above, it is clear Watson's decision to partially restore diminution credits did not violate Gladhill's Eighth Amendment rights. There is no genuine issue of material fact in dispute, and Watson is entitled to summary judgment in his favor as a matter of law.[8]

## CONCLUSION

For these reasons, Watson's motion for summary judgment will be granted.[9] A certificate of appealability shall not issue, as there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A separate order follows this memorandum.

August 28, 2013 /s/
Date Catherine C. Blake
United States District Judge

---

[8] In light of the above, the court need not reach Watson's qualified immunity defense.

[9] After filing his opposition, Gladhill filed a "Motion to Amend with Reques[t] for Restraining Order " (ECF No. 15), alleging that after he entered a settlement in an unrelated case, Civil Action No. CCB-08-3331, he was removed from his prison job and transferred to another facility. Gladhill's eleventh-hour attempt to add a claim of retaliation predicated on unrelated matters will be denied without prejudice. Gladhill may pursue his claim in a separate complaint.